IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUGLAS A. HOGLAN, ) | |
|     Plaintiff, ) | Case No. 7:22-cv-00460 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| GLENN YOUNGKIN, et al., ) | Chief United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that a modification to the state statutory scheme governing earned sentence credits violates his constitutional rights. By memorandum opinion and order entered December 6, 2022, the court dismissed Hoglan's complaint without prejudice for failure to state a claim upon which relief may be granted. The order permitted Hoglan to file a motion to reopen the action, along with an amended complaint, if he believed that he could remedy the deficiencies noted by the court.

The matter is presently before the court on Hoglan's motion to reopen the case, ECF No. 14, and his amended complaint, ECF No. 14-2. For the reasons set forth below, the court will grant the motion to reopen for the limited purpose of reviewing the amended complaint under 28 U.S.C. § 1915A(a). Having reviewed the amended complaint, the court concludes that it must be dismissed for failure to state a claim upon which relief may be granted.

### I.     Background

In 1994, the Virginia General Assembly enacted legislation establishing the Earned Sentence Credit ("ESC") system for inmates convicted of a felony offense committed on or

after January 1, 1995. See Va. Code Ann. §§ 53.1-202.2–53.1-202.4. The system allows inmates to earn sentence credits "through adherence to rules prescribed pursuant to § 53.1-25, through program participation as required by §§ 53.1-32.1 and 53.1-202.3, and by meeting such other requirements as may be established by law or regulation." Id. § 53.1-202.2. Prior to July 1, 2022, inmates could earn a maximum of 4.5 sentence credits for every 30 days served.[1] See id. § 53.1-202.3 (effective until July 1, 2022).

In 2020, the General Assembly revised the ESC system by amending Virginia Code § 53.1-202.3. The statutory amendments created a two-tier system pursuant to which a "maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence" for certain enumerated offenses, including particular violent crimes and sex offenses. Va. Code Ann. § 53.1-202.3(A). In contrast, inmates who are serving a sentence for "any offense other than those enumerated in subsection A" (referred to herein as a "non-enumerated offense"), and who satisfy other statutory criteria, may earn as many as 7.5 or 15 days of sentence credits for every 30 days served. Id. § 53.1-202.3(B); see also Prease v. Clarke, 888 S.E.2d 758, 759 (Va. 2023) (describing the two-tier system created by the revised statutory scheme).

"The implementation of this two-tiered system was delayed until July 1, 2022."[2] Id. at 760 (citing 2020 Va. Acts, Spec. Sess. I, Ch. 50 (specifying that "the provisions of this act,

---

[1] One sentence credit is equivalent to a deduction of one day from a person's term of incarceration. Va. Code Ann. § 53.1-202.2.

[2] In the meantime, the Virginia Department of Corrections was required to "convene a work group to study the impact of the sentence credit amendments," and the work group was required to "report its findings and conclusions to the Governor and the General Assembly by June 1, 2023." 2020 Va. Acts, Spec. Sess. I, Ch. 50. The 2020 legislation detailed the information to be included in the report, including "the state fiscal impact of the sentence credit amendments, including any cost savings realized by reducing the length of time spent by persons in state correctional facilities," and "the number of persons affected by the sentence credit amendments and the distribution of such persons among state correctional facilities." Id.

other than the provisions of the second enactment of this act, shall become effective on July 1, 2022")). The 2020 legislation provided that the amended provisions of § 53.1-202.3 "shall apply retroactively to the entire sentence of any person who is confined in a state correctional facility and participating in the earned sentence credit system on July 1, 2022." 2020 Va. Acts, Spec. Sess. I, Ch. 50. Before the two-tiered system became effective on July 1, 2022, however, the General Assembly approved a biennial budget amendment proposed by the Governor that limits the ability of inmates serving sentences for both enumerated and non-enumerated offenses to earn enhanced sentence credits. That amendment (Amendment 19), which was added to the biennial budget as Item 404(R)(2), provides as follows:

> Notwithstanding the provisions of § 53.1-202.3, Code of Virginia, a maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence that is concurrent with or consecutive to a sentence for a conviction of an offense enumerated in subsection A of § 53.1-202.3, Code of Virginia.

2022 Va. Acts, Spec. Sess. I, Ch. 2, § 1-113, Item 404(R)(2). The budget provisions, including Item 404(R)(2) (the "Budget Amendment"), took effect on July 1, 2022, and remain in effect until June 30, 2024. See id. §§ 4-13.00, 4-14.00.

Hoglan alleges that he is one of the state inmates impacted by the Budget Amendment. See Am. Compl., ECF No. 14-2, at 12.[3] In 2008, Hoglan was convicted of multiple criminal offenses in the Circuit Court of Stafford County, Virginia. Id. at 9–10. He alleges that three of his seven felony convictions were for an offense enumerated in Virginia Code § 53.1-202.3(A). See id. at 10 (acknowledging that his three felony convictions for aggravated sexual battery, in

---

[3] Hoglan refers to the budget item as Amendment 19, the amendment number assigned to it in the Governor's proposed amendments.

violation of Virginia Code § 18.2-67.3, are "disqualified [for enhanced sentence credits] under subsection A of Section 53.1-202.3").[4] He alleges that his other felony convictions were for non-enumerated offenses, including convictions for possession of child pornography. Id. at 10. Pursuant to the Budget Amendment, Hoglan is only eligible to earn, for each of his sentences, up to 4.5 sentence credits for every 30 days served. Id. at 12.

Hoglan claims that the Budget Amendment violates his Fourteenth Amendment rights to equal protection and due process. In particular, Hoglan asserts that he is being "treated differently from others similarly situated to him"—namely, "those who committed, or may subsequently commit, the exact same non-enumerated offenses as he did." Id. at 14–15. He further asserts that the "disparate treatment violate[s his] state-created liberty interest in earning enhanced sentence credits at the same rate, whatever the rate the legislature may decide, as all of those similarly situated to him." Id. He seeks to enjoin the defendants from enforcing the Budget Amendment. Id. at 16. He also seeks to recover nominal damages.[5] Id.

## II. Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, the court must dismiss a complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive

---

[4] The list of offenses in subsection (A) of § 53.1-202.3 includes "[c]riminal sexual assault punishable as a felony under Article 7 (§ 18.2-62 et seq.) of Chapter 4 of Title 18." Va. Code. Ann. § 53.1-202.3(A).

[5] In a memorandum filed in support of his amended complaint, Hoglan makes clear that he is not seeking to obtain "a certain number of days off his sentence." Pl.'s Mem. Supp. Am. Compl., ECF No. 14-1, at 9 n.7. Rather, he hopes to be afforded the opportunity to earn sentence credits for time served for non-enumerated offenses at the same rate as other inmates who are serving time for the same non-enumerated offenses. Id.

dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555).

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

### III. Discussion

Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983[,] a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639

5

(4th Cir. 2011)). Having reviewed the amended complaint in accordance with the applicable law, the court concludes that it fails to state a plausible claim for relief under § 1983.

### A.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment, on which Hoglan first relies, provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision "does not take away from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). To prevail on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated. Doe v. Settle, 24 F.4th 932, 939 (4th Cir. 2022). If the plaintiff makes that initial showing, the court considers whether the disparity in treatment can be justified under the appropriate level of constitutional scrutiny. Id.

Hoglan's equal protection claim focuses on the classification created by the Budget Amendment. As a result of the provision added to the biennial budget, Hoglan is currently ineligible to earn more than 4.5 sentence credits for every 30 days served on sentences imposed for non-enumerated offenses, since the sentences are "concurrent with or consecutive to a sentence for a conviction of an offense enumerated in [§ 53.1-202.3(A)]." 2022 Va. Acts, Spec. Sess. I, Ch. 2, § 1-113, Item 404(R)(2). Hoglan emphasizes that inmates who are currently serving sentences for the same non-enumerated offenses for which he was convicted are eligible to earn sentence credits at a higher rate as long as they are not also serving a sentence for an offense enumerated in § 53.1-202.3(A), even if their prior criminal history includes one

or more enumerated offenses. For instance, Hoglan asks the court to consider a hypothetical situation in which an individual who previously served time for an enumerated sex offense, such as aggravated sexual battery, subsequently commits the same non-enumerated offenses that Hoglan committed. That individual, who is not currently serving a sentence for an enumerated offense, would be eligible to earn an enhanced level of sentence credits for the non-enumerated offenses, even though his prior criminal history includes the same enumerated sex offense for which Hoglan was convicted. Thus, Hoglan and his hypothetical counterpart would be treated differently as a result of the Budget Amendment, and Hoglan argues that the differential treatment would be based solely on the "timing" of their convictions for the non-enumerated offenses in relation to their convictions for an enumerated offense. Pl.'s Mem. Supp. Am. Compl., ECF No. 14-1, at 20; see also id. at 18 (asserting that the Budget Amendment "remarkably seems to imply that those with past convictions of enumerated crimes are not as dangerous as those with concurrent or consecutive terms, just because the former has served out their time before committing a subsequent non-enumerated offense").

In order to state a claim for a violation of the Equal Protection Clause, Hoglan must plausibly allege that he and his hypothetical counterpart are similarly situated or "in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); see also Doe, 24 F.4th at 93. He must also plausibly allege that the disparity in treatment caused by the Budget Amendment is "not justified under the appropriate level of scrutiny," Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020), which, in this context, means that it has no rational basis. See Moss v. Clark, 886 F.2d 686, 689–92 (4th Cir. 1989) (applying rational-basis review to provisions of the

7

District of Columbia Good Time Credits Act, which awarded differing sentence credits to two classes of inmates convicted of District of Columbia Code offenses). Even if the court assumes, without deciding, that Hoglan is similarly situated to a hypothetical individual with a prior criminal history of aggravated assault who is currently incarcerated for the same non-enumerated offenses, the allegations in the amended complaint are "insufficient to plausibly overcome the presumption of rationality" that applies to the Budget Amendment. Giarratano v. Johnson, 521 F.3d 298, 305 (4th Cir. 2008).

As an initial matter, the court rejects Hoglan's argument that the classification created by the Budget Amendment is subject to strict scrutiny. See Pl.'s Mem. Supp. Am. Compl. at 21. "In the equal-protection context, a 'challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion or gender.'" Ameur v. Gates, 759 F.3d 317, 327 (4th Cir. 2014) (quoting Giarratano, 521 F.3d at 303). Neither circumstance that would require heightened judicial scrutiny is implicated here. "A classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class," Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998), and "there is no fundamental right 'of a convicted person to be conditionally released before the expiration of a valid sentence,'" Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990) (quoting Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979)). Therefore, the "only proper judicial inquiry" is whether the challenged classification is rationally related to a legitimate state interest. Moss, 886 F.2d at 690; see also McGuinnis v. Royster, 410 U.S. 263, 269–70 (1973) (observing that

8

the lower court properly applied rational-basis review in a case challenging a state statute that denied certain state prisoners good-time credit toward parole eligibility).

Rational-basis review is "the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." Dallas v. Stanglin, 490 U.S. 19, 26 (1989). As the United States Court of Appeals for the Fourth Circuit recently explained:

> This test represents a powerful presumption of validity. The showing required to overturn that presumption is steep. A challenger must show there is no rational relationship between the disparity of treatment and some legitimate governmental purpose. The state need not make any showing; no evidence of any kind is required; reasonable speculation is enough. As for the justification, any conceivable reason will do. It does not matter what motivated the classification. Nor is there any place in rational-basis review to question the wisdom or logic of a state's legislation; rough line-drawing, even illogical or unscientific line drawing, is often necessary to governing. And unlike higher levels of scrutiny, there is no tailoring requirement under rational-basis review. All that is needed is an imperfect fit between a plausible reason and some legitimate end. In total, this test requires an extraordinary showing by a plaintiff . . . . He must negate every conceivable basis which might support the legislation.

Doe, 24 F.4th at 943–44 (internal quotation marks and citations omitted); see also id. at 944 (emphasizing that courts are "tasked with imagining any conceivable justification" for the challenged classification).

Applying these principles, the court concludes that Hoglan's amended complaint fails to state a claim for relief under the Equal Protection Clause. The pleading does not "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." Giarratano, 521 F.3d at 304 (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992)). In similar situations, courts have recognized that states have a legitimate interest in "preventing the early release of serious offenders" and that denying

inmates sentence credits "based on their criminal record is rationally related to [that] interest." Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991); see also Wottlin, 136 F.3d at 1034–37 (concluding that a Bureau of Prisons regulation did not violate the Equal Protection Clause by excluding from consideration for a sentence reduction prisoners whose current offense of conviction may be nonviolent, but who had a prior conviction for a violent offense). Additionally, the amended complaint itself identifies a "conceivable basis" that "might support" the classification created by the biennial Budget Amendment, id. at 303 (internal quotation marks and citation omitted)—namely, the need to alleviate the administrative burdens that would accompany having to calculate the sentence credits and projected release dates of inmates who, like Hoglan, are currently serving sentences for both enumerated and non-enumerated offenses. See Am. Compl. at 12 (noting that a potential reason for the Budget Amendment was that "it was possibly more difficult for [Virginia Department of Corrections] officials to properly . . . calculate inmates' releases under a system that included a hybrid scenario of inmates earning . . . sentence credits [at different levels depending on whether a sentence was for an offense enumerated in § 53.1-202.3(A)]").

Indeed, when presented with similar claims under the Equal Protection Clause, courts have recognized that administrative efficiency is a legitimate interest that could be rationally furthered by a provision that limits eligibility for sentence credits to particular groups of inmates. For instance, in Moss v. Clark, the Fourth Circuit rejected an inmate's claim that the District of Columbia Good Time Credits Act violated the equal protection component of the Fifth Amendment because it awarded differing good-time credits to two classes of inmates convicted of District of Columbia Code offenses solely based on whether the inmates were

10

assigned to a District of Columbia or federal correctional facility. 886 F.2d at 889–92. In doing so, the Court noted that the governmental interest in "efficient prison administration" provided "an additional justification for the challenged classification," since maintaining "two different good time schemes, one for District prisoners and one for all other prisoners, . . . would be administratively burdensome [for the Federal Bureau of Prisons]." Id. at 892. The Seventh Circuit subsequently reached the same conclusion in rejecting a similar challenge, emphasizing that limiting the benefits of the D.C. Act to offenders housed in D.C. correctional facilities "might reasonably balance the goals of reducing overcrowding, protecting the public, and avoiding unmanageable administrative burdens." Pryor, 914 F.2d at 925.

Here, the same can be said of the Budget Amendment. The General Assembly could have logically concluded that it was appropriate to limit eligibility for enhanced sentence credits to state inmates who are only serving sentences for non-violent or non-sex offenses that are not enumerated in § 53.1-202.3. This limitation, which is presently in place until June 30, 2024, could conceivably balance the goals of reducing prison populations, protecting public safety, and minimizing the administrative burdens imposed on the Department of Corrections. Additionally, it allows time for the General Assembly to evaluate the impact of the statutory amendments to the ESC system before deciding whether to expand the scope of inmates eligible to earn sentence credits at a higher rate. Courts have recognized that such a "gradual approach" on the part of a legislature is "not constitutionally impermissible." Doe v. Mich. Dep't of State Police, 490 F.3d 491, 505 (6th Cir. 2007) (internal quotation marks and citation omitted) (concluding that the legislative classification created by the effective date of statutory amendments to Michigan's Sex Offender Registration Act did not violate the Equal

11

Protection Clause, and noting that the gradual elimination of registration requirements would enable to the legislature to monitor the situation before deciding whether to expand an exemption).

For these reasons, Hoglan has failed to plausibly allege that the limitation created by the Budget Amendment is not rationally related to a legitimate government interest. Consequently, the amended complaint does not state an actionable claim for violation of the Equal Protection Clause.

### B. Due Process

Hoglan's amended complaint also fails to state a viable claim for denial of due process in violation of the Fourteenth Amendment. To state a due process claim, "a plaintiff must first show that he has a constitutionally protected liberty or property interest, and that he has been deprived of that protected interest by some form of state action." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (internal quotation marks and citations omitted). Unless the plaintiff makes such showing, "the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Id.

The amended complaint does not plausibly allege that Hoglan has been deprived of a protected liberty interest. "A liberty interest may arise from the Constitution itself or from an expectation or interest created by state laws or policies." Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 20120 (internal quotation marks and citation omitted). It is well settled that "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order for state laws or regulations

to create an enforceable liberty interest, they must "contain explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 462 (1989) (internal quotation marks and citation omitted); see also Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002) ("In order for a statute to create a vested liberty or property interest giving rise to procedural due process protection, it must confer more than a mere expectation . . . of a benefit. There must be entitlement to the benefit as directed by statute, and the statute must act to limit meaningfully the discretion of the decisionmakers.") (internal quotation marks and citation omitted).

In the amended complaint, Hoglan asserts that he has a "state created liberty interest in earning enhanced sentence credits at the same rate" as "those who committed, or may subsequently commit, the exact same non-enumerated offenses as he did." Am. Compl. at 14. Based on the plain language of the Budget Amendment, however, which became effective on the same day as the 2020 revisions to the ESC system, this assertion is without merit. As already discussed, the Budget Amendment renders Hoglan ineligible to earn enhanced sentence credits for time served on sentences for non-enumerated offenses, since the sentences are concurrent with or consecutive to the sentences imposed for aggravated sexual battery, an offense enumerated in § 53.1-202.3(A). Thus, while the Budget Amendment remains in effect, Hoglan is not eligible, much less entitled, to earn more than 4.5 sentence credits for every 30 days served on his sentences for non-enumerated offenses. Consequently, Hoglan is unable to show that he has been deprived of a protected liberty interest. See Wottlin, 136 F.3d at 1036 (concluding that a petitioner did not have a liberty interest in being released

13

early under a federal statute since the implementing regulation expressly provided that certain categories of inmates, including those with the same prior conviction as the petitioner, were not eligible for early release); see also Sultenfuss v. Snow, 35 F.3d 1494, 1500 (11th Cir. 1994) (noting that applicable statues and regulations "must be read together" to determine whether they give rise to a protected liberty interest"). In the absence of a protected liberty interest, Hoglan has no viable claim for violation of his right to due process.

## IV.  Conclusion

For the foregoing reasons, the court concludes that Hoglan's amended complaint fails to state a claim upon which relief may be granted. Therefore, it is subject to dismissal under 28 U.S.C. § 1915A(b)(1).

An appropriate order will be entered.

Entered: August 11, 2023

Michael F. Urbanski
Chief United States District Judge

14